<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
PAUL C. WILLIAMS,             :
                                    :       Civil Action No. 16-1245-BRM-DEA
           Plaintiff,       :
                                      :
                v.            :
ERIC J. VANDERUD, individually and   :       **OPINION**
in his official capacity,              :
                                      :
           Defendant.     :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Eric J. Vanderud's ("Officer Vanderud") Motion for Summary Judgment. (ECF No. 19.) Plaintiff Paul C. Williams ("Plaintiff") opposes the Motion. (ECF No. 26.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Officer Vanderud's Motion for Summary Judgment is **GRANTED**.

## I.     BACKGROUND

On March 6, 2014, Plaintiff reported to the New Jersey Superior Court, New Brunswick, third floor, in response to a pending temporary restraining order ("TRO") pursuant to the New Jersey Prevention of Domestic Violence laws filed by A.J.[1] before the Honorable Marcia L. Silva, J.S.C. (Pl.'s Statement of Facts (ECF No. 19-2) ¶ 3 and Pl.'s Decl. (ECF No. 26) ¶¶ 2-3.) At all times relevant, Officer Vanderud and Officer Smith, another court officer, remained on duty in Judge Silva's courtroom while she was on the bench. (ECF No. 19-2 ¶ 5 and Def.'s Opp. to Pl.'s

---

[1] The Court uses initials to describe two individuals in this case to protect their identities, since one was a plaintiff in a domestic violence matter and the other was a witness in that same matter.

Statement of Facts (ECF No. 26-2) ¶ 5.) Officer Vanderud, a sheriff's officer assigned to the Family Court,

> is responsible for security of the Court, its supporting judicial facilities, and the persons who take part in the court proceedings. He is tasked with the responsibility for the safety of judges, lawyers, litigants, witnesses and the judicial staff. His obligations include deterring violent or disruptive episodes for the area around the courtrooms and the entire court house.

(ECF No. 19-2 ¶ 2 and ECF No. 26-2 ¶ 2.) Plaintiff and A.J. waited in the hallway of the courthouse on the third floor for their TRO proceeding. (DVD of Pl.'s Arrest (ECF No. 19-8).)

Plaintiff alleges he was sitting most of the day waiting for the TRO proceeding until he stood up and "made a comment directed toward [M.P.][2] – 'knock it off.'" (ECF No. 19-2 ¶ 6 and ECF No. 26-2 ¶ 6.) Plaintiff's comment to "knock it off" was actually about A.J.'s activities. (ECF No. 19-2 ¶ 7 and ECF No. 26-2 ¶ 7.) Plaintiff alleges A.J. approached "a complete stranger," who was "distraught" from her domestic violence proceedings and

> started talking to her as she had done throughout the day and I have been ignoring her throughout the day, walking up to this strange woman and putting on this show about how she – making comments that she was more directing towards me to this women to the effect of I know exactly what you are going through, I am here for something just like that and this person is not standing too far from us, you know. Making these bizarre type of scene [sic].

(Pl.'s Dep. (Ex. D to ECF No. 19-5) at 65:11-20.) Plaintiff alleges it had been a long day and therefore he decided to

> finally stand up and just in a joking, sarcastic way of making conversation with [M.P.], whom I do not have a restraining with, I cannot address [A.J.] because had I addressed [A.J.] and told her to knock it off or anything like that, that would be a criminal offense for violating the domestic violence order. So I did not address [A.J.]. But I finally felt the need to, you know, I am there all day by myself.

---

[2] M.P. was A.J.'s witness is the TRO proceeding. (ECF No. 19-2 ¶ 9 and ECF No. 26-2 ¶ 9.)

> [A.J.] has, you know, at the time, [M.P.] and I were estranged
> friends, if you will, and so I engaged in conversation with [M.P.].

(*Id.* at 65:23-66:10.) In addition to his "knock it off" comment, Plaintiff stated, "see what happens when you support psycho," also referring to A.J. (*Id.* at 66:11-12 and Pl.'s Decl. (ECF No. 26) ¶ 5.) Plaintiff admits he could not directly address A.J., and thus decided to make the comments to M.P. (ECF No. 19-2 ¶ 6; Pl.'s Decl. (ECF No. 26) ¶ 6.)

Immediately after Plaintiff's "psycho" comment, A.J. stated she would have to let the "bailiff" know and walked into the courtroom. (ECF No. 19-2 ¶ 8; Pl.'s Decl. (ECF No. 26) ¶ 6; ECF No. 26-2 ¶ 8.) A.J. entered Judge Silva's courtroom, motioned for Officer Vanderud to come to the door, identified herself as a plaintiff in a domestic violence complaint with a pending TRO before Judge Silva, and stated Plaintiff, the defendant in her TRO proceeding, was bothering her witness in the lobby. (ECF No. 19-2 ¶ 9 and ECF No. 26-2 ¶ 9.) Plaintiff admits A.J. told Officer Vanderud she was "worried." (Ex. D to ECF No. 19-5 at 71:15-20.) Upon exiting the courtroom, Officer Vanderud saw five people in the hallway, one being Plaintiff. (ECF No. 19-2 ¶ 10 and ECF No. 26-2 ¶ 10.)

Officer Vanderud alleges Plaintiff was "arguing loudly with a woman who was standing against the back wall." (Def.'s Certif. (Ex. J to ECF No. 19-7) ¶ 6.) Therefore, he approached Plaintiff, asked him to quiet down, and to relocate to the other end of the hallway. (*Id.*) Officer Vanderud contends Plaintiff refused to relocate and began arguing with him by stating "he had a right to stand, a right to talk to . . . [M.P.], and claiming his first amendment rights were infringed." (*Id.* ¶ 7.) Officer Vanderud asserts Plaintiff then made pointing gestures toward him and M.P, and Officer Vanderud again told him he was being loud and disorderly and asked him to relocate to the other end of the hallway. (*Id.* ¶ 9.) Again, Plaintiff refused. (*Id.*) Thereafter, Plaintiff allegedly turned away from Officer Vanderud and "in a loud voice that everyone heard" stated, "where do

you want me to go sit and is your mother going to be there to f[***] me?" (*Id.* ¶ 10 and Ex. D to ECF No. 19-5 at 74:12-16.) Plaintiff admits he intentionally tried "to get under [Officer Vanderud's] skin" by making that comment. (Ex. D to ECF No. 19-5 at 90:25-91:2.) As a result, Officer Vanderud placed Plaintiff under arrest. (Ex. J to ECF No. 19-7 ¶ 11.)

In contrast, Plaintiff alleges that once Officer Vanderud exited the courtroom, Officer Vanderud approached him from behind, demanded he not talk to anyone, leave the area, and relocate to another area of the hallway. (Pl.'s Decl. (ECF No. 26) ¶ 7.) He contends Officer Vanderud pointed aggressively at the other end of the hallway. (*Id.*) Plaintiff denies that he was arguing loudly with M.P. (ECF No. 26-2 ¶ 10.) He admits, however, he did not comply with Officer Vanderud's demands to relocate, but instead "stood with [his] hands in [his] pockets and calmly asked Officer Vanderud why he was making such demands and attempted to explain that I was not bothering [M.P.]." (*Id.* ¶ 8 and Ex. D to ECF No. 19-5 at 71:2-4.) Plaintiff alleges in response to his comments, Officer Vanderud insisted Plaintiff not talk to anyone, leave the area, and pointed aggressively. (Pl.'s Decl. (ECF No. 26) ¶ 9.) Again, Plaintiff refused to relocate and "calmly asked [Officer Vanderud] if he understood that he was violating my [First] Amendment rights under the United States Constitution to exercises free speech and association." (*Id.* ¶ 10.) Plaintiff alleges Officer Vanderud responded by "more aggressively" persisting in his demands to have him not talk to anyone, leave the area, and relocate down the hall. (*Id.* ¶ 11.) Plaintiff asserts "[i]n response to [Officer Vanderud's] persistence . . . [he] smiled, laughed, reluctantly acquiesced, and proceeded to comply and walk in the direction that [Officer Vanderud] demanded." (*Id.* ¶ 12.) While allegedly complying, Plaintiff admits he made the above comment about Officer

Vanderud's mother. (*Id.* ¶ 13 and Ex. D to ECF No. 19-5 at 74:12-16.) As a result, Officer Vanderud placed Plaintiff under arrest. (Pl.'s Decl. (ECF No. 26) ¶ 14.)[3]

Within moments of the arrest, Officer Vanderud was joined by another sheriff's officer to help escort Plaintiff downstairs to the holding cells for processing and detaining purposes. (ECF No. 19-2 ¶ 15; Ex. D to ECF No. 19-5 at 91; Pl.'s Decl. (ECF No. 26) ¶ 16.) Plaintiff alleges that on his way to be processed and detained, Officer Vanderud was physically aggressive and verbally berated him. (Pl.'s Decl. (ECF No. 26) ¶ 17.) He alleges there was some pushing, tugging, and brushing up against the wall on the way to the processing room. (Ex. D to ECF No. 19-5 at 92-93.) He further contends Officer Vanderud stated he "doesn't give a shit about my f[******] constitution and that I was lucky he didn't kill me down there." (*Id.* at 93:21-24.) He also asserts Officer Vanderud made other comments to the other sheriff's officer that were "not necessarily directed" at him, but were for his "benefit." (*Id.* at 94:3-7.) Officer Vanderud alleges he did not berate Plaintiff or say anything about his constitutional rights, there was no pushing and tugging, and there was no brushing up against the wall. (Ex. J to ECF No. 19-7 ¶¶ 15-16.)

---

[3] The Court has reviewed the video recording of the incident leading up to Plaintiff's arrest. (ECF No. 19-8.) While the video has no audio, a quick description of the Court's observations is pertinent. Upon exiting the courtroom, Officer Vanderud approached Plaintiff from behind and began to point towards another direction in the hallway of the courthouse. (*Id.*) At this time, Plaintiff was facing the back of a waiting area with his hands in his pockets. (*Id.*) Plaintiff turned his head around to look at Officer Vanderud, pointed at an unknown direction and back at Officer Vanderud, and then continued to talk to Officer Vanderud. (*Id.*) Officer Vanderud again pointed down the hallway. (*Id.*) The parties engaged in a discussion for approximately fifty seconds before Plaintiff picked up a brief case and began walking towards the area in which Officer Vanderud was pointing. (*Id.*) However, in route to that area, he paused, turned around and said something to Officer Vanderud. (*Id.*) Officer Vanderud then placed him under arrest. (*Id.*) Two other sheriff's officer's appeared, one who then disappeared again, and another who helped escort Plaintiff through a door. (*Id.*) Officer Vanderud held Plaintiff's arm as he escorted him through the door. (*Id.*)

Plaintiff alleges that once he arrived for processing, he "was chained to a bench" and then "locked in a cell." (Ex. D to ECF No. 19-5 at 95:1-3.) He admits the time between processing and his release was approximately two hours. (*Id.* at 96.) Officer Vanderud recalls the time from "arrest to release" to be approximately one and one-half hours. (Ex. J to ECF No. 19-7 ¶ 17.) As a result of the events, Officer Vanderud issued Plaintiff a summons charging him with violation of N.J.S.A. § 2C:33-2(a)(1), disorderly conduct. (Complaint and Summons (Ex. I to ECF No. 19-7).) Plaintiff alleges the summons was dismissed with prejudice because video footage was not provided. (Pl.'s Decl. (ECF No. 26) ¶ 31.)

On March 4, 2016, Plaintiff filed a Complaint against Officer Vanderud in both his individual and official capacity alleging: (1) Officer Vanderud violated his First Amendment rights of the United States Constitution (Count I); (2) Officer Vanderud violated his Fourth Amendment rights of the United States Constitution (Count II); (3) Officer Vanderud violated the New Jersey Civil Rights Act ("NJCRA") by falsely arresting/imprisoning him, unreasonably seizing him, using excessive force during the arrest, and maliciously prosecuted him (Count III); and (4) Officer Vanderud committed assault and battery upon him (Count IV). (Compl. (ECF No. 1).) On February 22, 2017, Officer Vanderud filed a Motion for Summary Judgment. (ECF No. 19.) Plaintiff opposes the motion. (ECF No. 26.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it

has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence

and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III.    DECISION

Plaintiff brings claims against Officer Vanderud under 42 U.S.C. § 1983, alleging Officer Vanderud violated his First Amendment right to exercise free speech and association and violated his Fourth Amendment right by falsely arresting/imprisoning him, using excessive force when effectuating the arrest, unreasonably seizing him, and maliciously prosecuting him.[4] (Compl. (ECF No. 1) ¶¶ 24-35.) He also brings claims under the NJCRA, alleging Officer Vanderud falsely arrested/imprisoned him, used excessive force when effectuating the arrest, unreasonably seized him, and maliciously prosecuted him. (*Id.* ¶¶ 36-39.) Lastly, he argues Officer Vanderud committed an assault and battery upon him ("state tort claims"). (*Id.* ¶¶ 39-43.) Officer Vanderud moves for summary judgment as to Plaintiff's Fourth Amendment, NJCRA, First Amendment,

---

[4] Although Count II of Plaintiff's Complaint, alleging violations of the Fourth Amendment, does not articulate the specific Fourth Amendment violations, the Court construes Plaintiff's Complaint to assert Officer Vanderud falsely arrested/imprisoned him, used excessive force when effectuating the arrest, unreasonably seized him, and maliciously prosecuted him since those are the exact violations Plaintiff asserts under his NJCRA claim.

and state tort claims. He also invokes qualified immunity as to Plaintiff's Fourth Amendment, First Amendment, and NJCRA claims, arguing there was probable cause to arrest Plaintiff and that Officer Vanderud did not use excessive force. (*See* Pl.'s Motion for Summary Judgment (ECF No. 19-3 at 18-20).) The Court will address Plaintiff's Fourth Amendment, NJCRA, First Amendment, and state tort claims in turn, turning first to the question of qualified immunity.

### A. Immunity and Qualified Immunity

Officer Vanderud argues he is entitled to the protection of qualified immunity as to Plaintiff's Fourth Amendment claims because his actions were objectively reasonable. (ECF No. 19-3 at 18-20.) Specifically, he argues he did not violate any clearly established federal statutory or constitutional rights and that Plaintiff cannot show Officer Vanderud knew or should have known his acts would violate Plaintiff's constitutional rights. (*Id.* at 20.) Plaintiff argues there are material issues of fact as to whether Officer Vanderud's actions where objectively reasonable, and thus Officer Vanderud's Motion must be denied. (ECF No. 26 at 10.)

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State . . . . The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Generally, a suit by private parties seeking to impose a liability, which must be paid from public funds in a state treasury, is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state or by a federal statute. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment also bars suits against state officials, in their official capacity. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985)). The Eleventh Amendment does not, however, bar suits for damages against state officials in their individual or personal capacity, as such actions seek recovery against the personal assets of the defendant and the state is not the real party in interest. *Melo*, 912 F.2d at 635 (citation omitted). In addition, the Eleventh Amendment does not bar suits against state officials for declaratory or injunctive relief. *See Melo*, 912 F.2d at 635 n.5 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Here, Plaintiff seeks a declaratory judgment and damages against Officer Vanderud in his official and individual capacity. (*See* ECF No. 1 at 9-10.) Because the Eleventh Amendment bars suits against state officials in their official capacity for damages, Plaintiff is only entitled to proceed against Officer Vanderud in his official capacity for declaratory relief and against him in his individual capacity for damages and declaratory relief. Accordingly, Officer Vanderud's Motion is **GRANTED** as to Plaintiff's claim for damages against Officer Vanderud in his official capacity.

Government officials, however, may assert a defense of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249–50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine provides a government official immunity from suit rather than a mere defense from liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether Officer Vanderud is entitled to qualified immunity, the Court must undertake a two-step inquiry to determine the applicability of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted). "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.* In determining whether a defendant is entitled to qualified immunity, the court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. If the answer to either question is "no," the analysis ends there. *See id.* at 245 (finding that because the unlawfulness of the officers' conduct was not clearly established, the officers were entitled to qualified immunity, without having to answer the question of whether the officers violated the Plaintiff's constitutional rights).

The Court now turns to Plaintiff's Fourth Amendment claims to determine the applicability of qualified immunity.

## B. False Arrest

Officer Vanderud argues he had probable cause to arrest Plaintiff. (ECF No. 19-3 at 7-13.) Specifically, he argues he had probable cause to arrest Plaintiff for violation of N.J.S.A. § 2C:33-2(a)(1) because Plaintiff violated a TRO he had against him, called A.J. a "psycho," and repeatedly refused to obey the reasonable instruction to lower his voice and move away from A.J. (*Id.* at 12-13.) Plaintiff argues there are genuine issues of fact as to whether Officer Vanderud had probable cause to arrest him. (ECF No. 26 at 8-9.) Specifically, he argues he was not loud, engaged in protected speech, and was calm during his interaction with Officer Vanderud. (*Id.* at 9.)

"An arrest without probable cause is a Fourth Amendment violation actionable under Section 1983." *Lane v. City of Camden*, No. 11-5584, 2015 WL 5603039, at *4 (D.N.J. Sept. 23, 2015). To establish a false arrest claim, a plaintiff must prove: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Here, there is no dispute that Officer Vanderud arrested Plaintiff. Regarding, the second element, the inquiry "is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988); *see also*

*Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (noting that because a false arrest claim "hinge[s] on probable cause, the constitutional violation question . . . turns on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time" (citations omitted)).

The law is well settled in the Third Circuit, "in analyzing false arrest claims, a court to insulate a defendant from liability need only find that probable cause . . . existed as to any offense that could be charged under the circumstances." *Johnson v. Knorr*, 477 F.3d 75, 84–85 (3d Cir. 2007) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). The Court has defined probable cause as "facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see Illinois v. Gates*, 462 U.S. 213, 232 (1983) (stating that probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual context-not readily, or even usually, reduced to a neat set of legal rules"); *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) ("[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."). Probable cause "is a factual analysis from which the officers on the scene must make an immediate determination." *La v. Hayducka*, 269 F. Supp. 2d 566, 576 (D.N.J. 2003).

Although probable cause "requires more than mere suspicion, the law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence that a reasonable doubt . . . standard demands." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (citation omitted). To determine whether a law

enforcement officer possessed sufficient probable cause to effectuate an arrest, courts analyze the totality of the circumstances. *Kaltenbach*, 204 F.3d at 436 (citing *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)). Typically, the existence of probable cause is a factual issue for the jury. *See Halsey v. Pfeiffer*, 750 F.3d 273, 300 (3d Cir. 2014). "However, a court may grant summary judgment if 'no genuine issue of material fact exists as to whether' there was probable cause." *Anderson v. Perez*, 677 F. App'x 49, 52 (3d Cir. 2017) (citing *Sherwood*, 113 F.3d at 401).

In this case, the evidence proffered by Officer Vanderud confirms he had probable cause to arrest Plaintiff as a matter of law. The record clearly establishes that at the time of Plaintiff's arrest, the facts and circumstances within Officer Vanderud's knowledge were "sufficient in themselves to warrant a reasonable person to believe that an offense had been or was being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483.

Specifically, Plaintiff admits that on March 6, 2014, immediately after he made the "psycho" comment, A.J. stated she would have to let the "bailiff" know and walked into the courtroom. (ECF No. 19-2 ¶ 8; Pl.'s Decl. (ECF No. 26) ¶ 6; ECF No. 26-2 ¶ 8.) A.J. entered Judge Silva's courtroom, motioned for Officer Vanderud to come to the door, identified herself as a plaintiff in a domestic violence complaint with a pending TRO before Judge Silva, and stated Plaintiff, the defendant in her TRO proceeding, was bothering her witness in the lobby and that she was "worried." (ECF No. 19-2 ¶ 9; ECF No. 26-2 ¶ 9; Ex. D to ECF No. 19-5 at 71:15-20.) For that reason alone, Officer Vanderud had probable cause to arrest Plaintiff for a violation of N.J.S.A. § 2C:33-2(a)(1), disorderly conduct. N.J.S.A. § 2C:33-2(a)(1) states "[a] person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he . . . [e]ngages in fighting or threatening, or in violent or tumultuous behavior." Plaintiff admits A.J. told Officer Vanderud Plaintiff was "bothering her

witness" and that she was "worried." This was sufficient for Officer Vanderud to believe Plaintiff committed the offense of disorderly conduct because it satisfied the annoyance element and threatening element, especially taking into consideration that Plaintiff was at the courthouse to defend a TRO. *Orsatti*, 71 F.3d at 483 ("[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.").

Furthermore, Plaintiff also admits Officer Vanderud was

> responsible for security of the Court, its supporting judicial facilities, and the persons who take part in the court proceedings. He is tasked with the responsibility for the safety of judges, lawyers, litigants, witnesses and the judicial staff. His obligations includes deterring violent or disruptive episodes for the area around the courtrooms and the entire court house.

(ECF No. 19-2 ¶ 2 and ECF No. 26-2 ¶ 2.) Indeed, N.J.S.A. § 2B:6-1(d) establishes that: "The sheriff of each county shall provide the security for the Law and Chancery Divisions of the Superior Court sitting in that county in the manner established by the assignment judge in the county." The website for the Middlesex County Sheriff's Department, http://www.middlesexcountynj.gov/Government/Departments/PSH/Pages/Court-Security.aspx, acknowledges this responsibility, stating that among the duties of its Court Security Division is the "protection to everyone throughout the Family and Criminal Courthouses. This includes judges and court personnel as well as the general public." Therefore, when A.J. entered Judge Silva's courtroom on March 6, 2014, motioned for Officer Vanderud to come to the door, identified herself as a complainant in a domestic violence complaint with a pending TRO before Judge Silva, and stated Plaintiff, the defendant in her TRO proceeding, was bothering her witness in the lobby and that she was "worried," Officer Vanderud was required to at a minimum investigate and insure

A.J.'s and her witness were safe and would remain safe. (ECF No. 19-2 ¶ 9; ECF No. 26-2 ¶ 9; Ex. D to ECF No. 19-5 at 71:15-20.)

In order to ensure the safety of all, Officer Vanderud asked Plaintiff to relocate to another area of the hallway. Plaintiff admits, however, he did not comply with Officer Vanderud's demands to relocate, but instead "stood with [his] hands in [his] pockets and calmly asked [Officer Vanderud] why he was making such demands and attempted to explain that I was not bothering [M.P.]." (Pl.'s Decl. (ECF No. 26) ¶ 8 and Ex. D to ECF No. 19-5 at 71:2-4.) Plaintiff alleges in response to his comments, Officer Vanderud insisted Plaintiff not talk to anyone, leave the area, and pointed aggressively. (ECF No. 26 ¶ 9.) Again, Plaintiff refused to relocate and "calmly asked [Officer Vanderud] if he understood that he was violating my [First] Amendment rights under the United States Constitution to exercises free speech and association." (*Id.* ¶ 10.) Plaintiff alleges Officer Vanderud responded by "more aggressively" persisting in his demands to have him not talk to anyone, leave the area, and relocate down the hall. (*Id.* ¶ 11.) Plaintiff asserts "[i]n response to [Officer Vanderud's] persistence . . . [he] smiled, laughed, reluctantly acquiesced, and proceeded to comply and walk in the direction that [Officer Vanderud] demanded." (*Id.* ¶ 12.) While allegedly about to comply, Plaintiff admits he turned around and asked Officer Vanderud "where do you want me to go sit and is your mother going to be there to f[***] me?" (*Id.* ¶ 13 and Ex. D to ECF No. 19-5 at 74:12-16.)

These facts and circumstances encountered by Officer Vanderud were "sufficient in themselves to warrant a reasonable person to believe that an offense had been or was being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483. Plaintiff refusing to relocate on two separate occasions and then beginning to relocate, but making obnoxious comments to "get under [Officer Vanderud's] skin" could be reasonably perceived as being done with the purpose

to cause "public inconvenience, annoyance or alarm" in violation of N.J.S.A. § 2C:33-2(a)(1). (*See* Ex. D to ECF No. 19-5 at 90:25-91:2.) Moreover, Plaintiff's comments about Officer Vanderud's mother to get under his skin, combined with A.J.'s worry and the fact that Plaintiff was at the courthouse to defend a TRO satisfy the "threatening" element of N.J.S.A. § 2C:33-2(a)(1). Because no genuine issue of material fact exists as to whether there was probable cause to arrest Plaintiff, the Officer Vanderud's Motion to Dismiss Plaintiff's false arrest claim is **GRANTED**. A finding that Officer Vanderud did not violate Plaintiff's Fourth Amendment right ends the qualified immunity inquiry; Plaintiff cannot make out a claim for false arrest and therefore cannot allege a violation of a constitutional right. *See Pearson*, 555 U.S. at 232; *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 439 (D.N.J. 2011).

### C. False Imprisonment

Although Plaintiff's Complaint does not specifically articulate a claim for false imprisonment pursuant to the Fourth Amendment, the Court construes Plaintiff's Complaint to assert Officer Vanderud falsely imprisoned him. Since Plaintiff's Complaint did not specifically articulate a claim for false imprisonment, Officer Vanderud does not directly seek to dismiss that claim in his Motion. However, Officer Vanderud does argue "Plaintiff fails to establish *any* claim for relief under 42 U.S.C. § 1983 for violation of both his Federal or State of New Jersey constitutional rights." (ECF No. 19-3 at 17 (emphasis added).) Further, Officer Vanderud argues he had probable cause to arrest Plaintiff. (*Id.* at 7-13.) Because an arrest based on probable cause cannot be the basis for a false imprisonment claim, the Court construes Officer Vanderud's Motion to seek dismissal of Plaintiff's false imprisonment claim.

If there is a false arrest, "the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d

Cir.1995). But an arrest based on probable cause cannot be the basis for a false imprisonment claim. *Id.* This Court has concluded Officer Vanderud had probable cause to arrest Plaintiff, so the subsequent detention of Plaintiff did not violate his constitutional rights. Accordingly, Officer Vanderud's Motion to Dismiss Plaintiff's false imprisonment claim is **GRANTED**. A finding that Officer Vanderud did not violated Plaintiff's Fourth Amendment right ends the qualified immunity inquiry; Plaintiff cannot make out a claim for false imprisonment and therefore cannot allege a violation of a constitutional right. *See Pearson*, 555 U.S. at 232; *Trafton*, 799 F. Supp. 2d at 439.

### D. Malicious Prosecution

Although Plaintiff's Complaint does not specifically articulate a claim for malicious prosecution pursuant to the Fourth Amendment, the Court construes Plaintiff's Complaint to assert Officer Vanderud maliciously prosecuted him. Since Plaintiff's Complaint did not specifically articulate a claim for malicious prosecution, Officer Vanderud does not directly seek to dismiss that claim in his Motion. However, Officer Vanderud does argue "Plaintiff fails to establish *any* claim for relief under 42 U.S.C. § 1983 for violation of both his Federal or State of New Jersey constitutional rights." (ECF No. 19-3 at 17 (emphasis added).) Further, Officer Vanderud argues he had probable cause to arrest Plaintiff. (*Id.* at 7-13.) Because an arrest based on probable cause cannot be the basis for a malicious prosecution claim, the Court also construes Officer Vanderud's Motion to seek dismissal of Plaintiff's malicious prosecution claim.

To prove malicious prosecution under § 1983 when the claim is under the Fourth Amendment, a plaintiff must demonstrate:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson*, 477 F.3d at 81-82 (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)). A claim for malicious prosecution will fail if it has been determined that probable cause existed in considering a false arrest claim. *See id.* at 86. Officer Vanderud had probable cause to arrest Plaintiff, so the subsequent prosecution of Plaintiff did not violate his constitutional rights. Accordingly, Officer Vanderud's Motion to Dismiss Plaintiff's malicious prosecution claim is **GRANTED**. A finding that Officer Vanderud did not violated Plaintiff's Fourth Amendment right ends the qualified immunity inquiry; Plaintiff cannot make out a violation of malicious prosecution and therefore cannot allege a violation of a constitutional right. *See Pearson*, 555 U.S. at 232; *Trafton*, 799 F. Supp. 2d at 439.

### E. Excessive Force/Unreasonable Seizure

Officer Vanderud argues he did not use an unreasonable force in arresting Plaintiff. (ECF No. 19-3 at 14-17.) Specifically, he argues the video shows no force was used during the arrest and "the Court should draw no inference that is inconsistent with the video evidence." (*Id.* at 15.) He further argues Plaintiff admits he sustained no injuries due to the alleged "force." (*Id.* at 16.) Plaintiff argues there is an issue of fact as to whether or not Officer Vanderud used excessive force. (ECF No. 26 at 9-10.)

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). "The use of excessive force is itself

an unlawful 'seizure' under the Fourth Amendment." *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006).

"To determine the reasonableness of a seizure, the court asks whether the officer's conduct was 'objectively reasonable' in light of the totality of the circumstances, without regard to the underlying intent or motivation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 227 (D.N.J. 2015) (citing *Graham*, 490 U.S. at 397); *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). The "objective reasonableness" inquiry requires an examination of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.*

The Supreme Court has provided that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (citation omitted). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

In *Cincerella v. Egg Harbor Tp. Police Dep't*, No. 06–1183, 2009 WL 792489 (D.N.J. March 23, 2009), this Court noted several factors the Third Circuit found relevant in determining whether a plaintiff's treatment after arrest constituted excessive force. These factors included:

> the intensity of the plaintiff's pain, the officer's awareness of the plaintiff's pain, whether the plaintiff asked to have the handcuffs removed and how long after those requests the handcuffs are removed, whether there were circumstances justifying a delay in removing the handcuffs, and the severity of the injury the plaintiff suffered.

*Cincerella*, 2009 WL 792489, at *10 (D.N.J. March 23, 2009) (citations omitted); *see Gilles v. Davis*, 427 F.3d 197, 207-08 (3d Cir. 2005) (finding insufficient evidence of excessive force where plaintiff claimed his singing should have alerted police to his pain, there were no "obvious visible indicators" of plaintiff's pain, plaintiff did not express discomfort when handcuffed, and plaintiff did not "seek or receive medical treatment after the fact"). "While the absence of physical injury does not necessarily signify that the force was not excessive, excessive force claims must be so egregious as to be constitutionally excessive, and the presence of some physical injury is relevant to that determination." *White v. City of Trenton*, No. 06-5177, 2011 WL 6779595, at *5 (D.N.J. Dec. 27, 2011), *on reconsideration in part*, 848 F. Supp. 2d 497 (D.N.J. 2012) (citing *Sharrar*, 128 F.3d at 822); *see also Gulley v. Elizabeth City Police Dep't*, 340 F. App'x. 108, 110 n.2 (3d Cir. 2009) ("[T]he absence of physical injury does not necessarily signify that the force has not been excessive. Rather, it is simply one of the circumstances to be considered under the objective reasonableness standard . . . .") (citation omitted).

There is no dispute that Plaintiff was seized. Therefore, this Court need only determine whether Officer Vanderud's use of force in seizing Plaintiff was objectively reasonably. In his Complaint, Plaintiff asserts while on his way to be processed and detained, Officer Vanderud was physically aggressive and verbally berated him. (ECF No. 1 ¶ 17.) In his deposition, he clarifies that Officer Vanderud had a "hand on" his arm the entire time as he walked him down to processing. (Ex. D to ECF No. 19-5 at 92:8-16.) He further alleges there was some "pushing and tugging" conducted by Officer Vanderud on his way to the processing area and that he "brushed up against the wall." (*Id.* at 92:17-93:9.) However, he admits he did not fall, hit a door, injure himself, or sustain any bruising. (*Id.* at 93:5-15.)

Based on the record, no reasonable jury could determine Officer Vanderud subjected Plaintiff to excessive force. First, Plaintiff admits he sustained no injuries. *White*, 2011 WL 6779595, at *5 ("While the absence of physical injury does not necessarily signify that the force was not excessive, excessive force claims must be so egregious as to be constitutionally excessive, and the presence of some physical injury is relevant to that determination."). Second, "pushing and tugging" and brushing up against, but not hitting or banging Plaintiff against the wall, is not excessive force. *Graham*, 490 U.S. at 396 (finding "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment"). Officer Vanderud used appropriate force in a good faith effort to escort and direct Plaintiff to the processing area, by "pushing" and "tugging" on him as needed for direction. Indeed, the video reveals Officer Vanderud held Plaintiff's arm to escort him through the door and to guide him to the processing area. (ECF No. 8.) No force is displayed in the video, but a slight "tug" or abrupt pause to prevent Plaintiff from walking as Officer Vanderud stopped to talk to another sheriff's officer. (*Id.*) Accordingly, Officer Vanderud's Motion for Summary Judgment as to Plaintiff's excessive force and unreasonable seizure claim is **GRANTED**. A finding that Officer Vanderud did not violated Plaintiff's Fourth Amendment right ends the qualified immunity inquiry, since Plaintiff cannot make out a violation of excessive force. *See Pearson*, 555 U.S. at 232; *Trafton*, 799 F. Supp. 2d at 439.

**F. NJCRA**

Officer Vanderud argues Plaintiff fails to establish any claim under the NJCRA. (ECF No. 19-3 at 17.) Plaintiff argues his NJCRA claims cannot be dismissed because the New Jersey Torts Claims Act ("NJTCA") notice requirement does not apply to Plaintiff's NJCRA claims. (ECF No. 26 at 10-11.) While Plaintiff is correct, Plaintiff misconstrues Officer Vanderud's argument. *See*

*Owens v. Feigin*, 194 N.J. 607, 614 (2008) (holding the notice requirements of the NJTCA do not apply to the NJCRA). Officer Vanderud does not argue Plaintiff's NJCRA claims are barred by the NJTCA, but instead that Plaintiff has failed to establish a claim for relief for his NJCRA claims. (ECF No. 19-3 at 17.) Officer Vanderud's does, however, argue Plaintiff's state tort claims should be dismissed for failure to comply with the NJTCA notice requirements. (*Id.* at 21.) Plaintiff's state tort claims will be addressed in Section H below.

The NJCRA provides, in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. § 10:6–2(c). The NJCRA was modeled after Section 1983, and "courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of [Section] 1983[,]'" thereby construing the NJCRA in terms similar to its federal counterpart. *Samoles v. Lacey Twp.*, No. 12–3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (citation omitted); *Hartfelder v. N.J. State Police*, No. 165461, 2017 WL 3184173, at *5 (D.N.J. July 26, 2017); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010). This Court has repeatedly interpreted the NJCRA analogously to § 1983. *See Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart"); *Armstrong*, 2010 WL 2483911 at *5 ("[T]he [NJRCA] is a kind of analog to section 1983"). The NJCRA is therefore generally interpreted nearly identically to § 1983 and claims under the NJCRA are generally coterminous with and

subject to the same defenses and immunities as those brought under § 1983. *Trafton*, 799 F. Supp. 2d at 443-44.

Therefore, the Court will analyze Plaintiff's NJCRA claims through the lens of Section 1983. *Middleton v. City of Ocean City*, No. 12-0605, 2014 WL 2931046, at *6 (D.N.J. June 30, 2014) (noting New Jersey courts apply virtually the same standard under state law for malicious prosecution claims); *See Lucia v. Carroll*, No. 12–3787, 2014 WL 1767527, at *3–5 (D.N.J. May 2, 2014) (granting summary judgment in the officer's favor on his Fourth Amendment false arrest claim and corresponding malicious prosecution claim on the grounds that the officer had probable cause to arrest and holding because the analysis for the plaintiff's corresponding claims under N.J. Const. art. I ¶ 7 and NJCRA would be the same, the officer was entitled to summary judgment on those claims as well); *see also Norcross v. Town of Hammonton*, No. 04-2536, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) ("The New Jersey Supreme Court does not appear to have spoken on whether excessive force is a context where state law provides greater protection than does federal law. This Court sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution.").

For the reasons expressed in connection with the Section 1983 analyses above, Officer Vanderud's Motion to Dismiss with respect to Plaintiff's NJCRA claims (Count III) is **GRANTED**.

### G. First Amendment

Plaintiff asserts a First Amendment retaliation claim against Officer Vanderud in his Complaint. (ECF No. 1 ¶¶ 24-32.) Specifically, he argues Officer Vanderud arrested him for engaging in protected activity such as speaking to A.J's witness in the hallway of the courtroom,

asking the officer questions, and telling the officer "where do you want me to go sit and is your mother going to be there to f[***] me?" (*See id.*) Although Officer Vanderud's Motion does not single out Plaintiff's First Amendment claim and argue summary judgment should be granted for independent reasons it generally argues there was probable cause to arrest Plaintiff and Officer Vanderud is entitled to qualified immunity. (ECF No. 19-3 at 7-13.) However, Officer Vanderud's reply brief, argues Plaintiff's "[F]irst [A]mendment claim fails because [Officer Vanderud] only sought to edge [Plaintiff's] up the hall in order to defuse the situation." (ECF No. 30-1 at 3-4.) Accordingly, the Court construes Officer Vanderud's Motion to seek summary judgment as to Plaintiff's First Amendment claim.

The First Amendment to the United States Constitution states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I. To prove a First Amendment retaliation claim a plaintiff must prove: "first, that she engaged in protected activity; second, that the government responded with retaliation; third, that this protected activity was the cause of the government's retaliation." *Pulice v. Enciso*, 39 F. App'x 692, 696 (3d Cir. 2002); *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) ("To state a First Amendment retaliation claim, a plaintiff must allege two things (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action.").

However, "if probable cause existed to arrest Plaintiff for criminal conduct, Plaintiff may not maintain his claim that he was instead arrested for protected speech." *Whaley v. Borough of Collingswood*, No. 10-4343, 2012 WL 2340308, at *13 (D.N.J. June 18, 2012); *see Pulice*, 39 F.

App'x at 696 (affirming summary judgment against plaintiff's First Amendment claim of retaliatory arrest where plaintiff was not arrested for expressing her views but for violating the law); *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (where probable cause exists, "any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail"). Because the Court finds there was probable cause to arrest Plaintiff, Officer Vanderud's Motion for Summary Judgment as to Plaintiff's First Amendment claim is **GRANTED**. Plaintiff was not arrested for his free speech, but because he acted unlawfully and violated N.J.S.A. § 2C:33-2(a)(1).

### H. Assault and Battery

Officer Vanderud argues Plaintiff's assault and battery claims must be "dismissed with prejudice" for failure to comply with NJTCA's notice requirements. (ECF No. 19-3 at 21.) Plaintiff does not dispute this argument. Instead, he argues his NJCRA claims cannot be dismissed because the NJTCA notice requirement does not apply to his NJCRA claims. (ECF No. 26 at 10-11.)

The NJTCA provides, "[n]o action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter." N.J.S.A. § 59:8-3. A tort claim notice "must be served upon the public entity within 90 days of the accrual of the claim, and failure to do so will forever bar the claimant from recovering against a public entity or public employee." N.J.S.A. § 59:8-8.

The accrual date under the NJTCA is generally the date on which the alleged tort is committed. *Beauchamp v. Amedio*, 164 N.J. 111, 116-17 (2000). The requirement to serve a tort claim notice applies to claims based on negligence and intentional torts. *See Velez v. City of Jersey City*, 180 N.J. 284, 286 (2004). However, the requirement that a plaintiff serve a tort claim notice

for intentional torts only relates to claims arising after June 29, 2004. *See id.* at 296-97 (interpreting the NJTCA's notice requirements to apply also to claims for intentional torts, but stating that the holding "applied prospectively to all similar causes of action accruing after [June 29, 2004]"); *see also Hernandez v. City of Union City*, 2008 WL 364275, *3 (3d Cir. 2008). Therefore, to determine whether a plaintiff's untimely notice of claim bars its state tort claims, first it must be determined if the plaintiff has alleged claims for intentional torts. If so, it must then be determined whether those claims accrued prior to June 29, 2004.

Plaintiff concedes he never filed a notice of claim prior to filing suit in this Court. (*See* ECF No. 26 at 10-11 (arguing the notice requirement is not applicable, instead of rebutting Officer Vanderud's argument that he did not file a notice of claim).) Further, Plaintiff failed to submit any evidence demonstrating he served a tort claim notice on Officer Vanderud. Accordingly, the Court is barred by N.J.S.A. § 59:8–8 from considering Plaintiff's state tort claims. *See, e.g., Guzman v. City of Perth Amboy*, 214 N.J. Super. 167, 171-72 (App. Div. 1986) (holding that plaintiff's claims were barred because plaintiff failed to comply with the notice requirement under N.J.S.A. § 59:8–8).

Although Plaintiff has not moved to file a late notice of claim, the Court notes that it has no discretion to grant him the opportunity to do so. The NJTCA states that a claimant who fails to file a notice of claim within 90 days "may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. § 59:8–9. Here, however, Plaintiff's claim accrued on March 6, 2014, and the one-year limitation expired on March 6, 2015. "After the one-year limitation has passed, 'the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law

must fail.'" *Pilonero v. Twp. of Old Bridge*, 236 N.J. Super. 529, 532-33 (App. Div. 1989) (*quoting Speer v. Armstrong*, 168 N.J. Super. 251, 255-56 (App. Div. 1979)).

Because Plaintiff did not file a notice of claim pursuant to N.J.S.A. § 59:8–8, Officer Vanderud's Motion as to Plaintiff's state tort claims (Count IV) is **GRANTED**.

**IV.    CONCLUSION**

For the reasons set forth above, Officer Vanderud's Motion for Summary Judgment is **GRANTED** in its entirety.

**Date:** September 26, 2017                    */s/ Brian R. Martinotti*
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**